# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLOUDING IP, LLC<br><br>                Plaintiff,<br><br>     v.<br><br>RACKSPACE HOSTING, INC., RACKSPACE US, INC., and JUNGLE DISK, LLC,<br><br>                Defendant. | C.A. No. 12-675 (LPS) |

## CLOUDING IP LLC'S ANSWERING BRIEF IN OPPOSITION TO RACKSPACE'S MOTION TO DISMISS INDIRECT INFRINGEMENT CLAIMS FROM PLAINTIFF'S SECOND AMENDED COMPLAINT

July 29, 2013

OF COUNSEL:

Marc A. Fenster
Brian Ledahl
Dorian S. Berger
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
bledahl@raklaw.com
dberger@raklaw.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (sb5938)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

Attorneys for Plaintiff,
CLOUDING IP, LLC

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. BACKGROUND ................................................................................................................... 3
III. ARGUMENT ........................................................................................................................ 4
  A. Clouding IP's Complaint Sufficiently Pleads The Intent Required For Induced Infringement Arising From Post-Filing Conduct. .................................................... 5
  B. Rackspace's Allegation That It Cannot Have Intent Because It Believes The Patents Are Invalid Countervails Established Law, Runs Against Fact, And Is Impermissible On A Motion To Dismiss. ................................................................. 9
IV. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apeldyn Corp. v. Sony Corp.*,
  852 F. Supp. 2d 568 (D. Del. 2012) ..................................................................................1, 5

*Commil USA, LLC v. Cisco Systems, Inc.*,
  2013 U.S. App. LEXIS 12943, __ F.3d __ (Fed. Cir. June 25, 2013) ...............................2, 10

*Common Cause of Pa. v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009) .................................................................................................12

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) ...............................................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S.Ct. 2060 (2011) .........................................................................................................5, 9

*Monec Holding AG v. Motorola Mobility*,
  897 F. Supp. 2d 225 (D. Del. 2012) ...............................................................................4, 7, 8

*Oracle Corp. v. Clouding IP, LLC*,
  Case No. IPR 2013-00075 (P.T.A.B. May 3, 2013) .............................................................11

*Oracle Corp. v. Clouding IP, LLC*,
  Case No. IPR 2013-00088 (P.T.A.B. May 14, 2013) ...........................................................11

*Walker Digital v. Facebook*,
  852 F. Supp. 2d 559 (D. Del. 2012) .....................................................................................5, 8

*Xpoint Tech. v. Microsoft Corp.*,
  730 F. Supp. 2d 349 (D. Del. 2010) .......................................................................................7

**Statutes**

35 U.S.C. § 271(b) .........................................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 18 ................................................................................................1

Federal Rule of Civil Procedure 8 ........................................................................................1, 3, 12

I.      **INTRODUCTION**

Clouding IP LLC's ("Clouding IP") Second Amended Complaint ("Complaint") (D.I. 71) placed Rackspace Hosting, Inc., Rackspace US, Inc. and Jungle Disk, LLC (collectively, "Rackspace") on notice as to what they must defend and more than meets the requirements of Rule 8 and Form 18 of the Federal Rules of Civil Procedure.  Rackspace does not challenge the factual assertions in the Complaint.  Rather, under the guise of a motion to dismiss, Rackspace requests this Court prematurely engage in a fact-finding inquiry reserved for summary judgment or trial.  Rackspace's only contention is that Clouding's Complaint contains allegations of fact rather than the evidence that will ultimately prove those facts.  Rule 8 does not require what Rackspace demands.  Rackspace asks this Court to accept a novel theory of the pleading requirements for induced infringement, a theory no court anywhere has ever accepted and that contradicts well-established precedent from the Supreme Court, the Federal Circuit, and this Court.

Clouding IP's claims of indirect infringement are limited to Rackspace's conduct after the filing of the initial Complaint and require only that Clouding IP plead that Rackspace had knowledge of the patents and engaged in conduct that induced others to directly infringe the patents after the filing of the initial Complaint.  Despite Rackspace's statements, the Federal Circuit and courts in this District have held, to plead indirect infringement based on post-filing conduct a party need only plead "a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint." *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 574 (D. Del. 2012) (*citing Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011).  Here, Clouding IP has alleged knowledge of the Complaint (D.I. 71 ¶ 17) and Rackspace's decision to continue selling infringing products and services (*e.g.*,

Rackspace Next Generation Cloud Platform) (*Id.* ¶ 11), and providing instructions, and other inducements to engage in infringing conduct, after the filing of the Complaint (*Id.* ¶¶ 14, 16).

Although not required, Clouding IP's complaint pleads numerous instances where Rackspace induces its customers to use Rackspace products in a manner infringing the patents-in-suit. (*Id.* ¶ 16.) In addition, Clouding IP identifies functionality in the Rackspace products that infringes the Clouding IP patents. (*Id.* ¶ 11.) Further, Clouding IP identifies how Rackspace encourages induced infringement through "technical documentation, manuals, instructions and technical support." (*Id.* ¶ 16.)

Perhaps recognizing the sufficiency of the allegations in the Complaint, Rackspace also puts forward an additional, wholly novel argument: because Rackspace purportedly has a good-faith basis for believing the patents-in-suit are invalid, Rackspace does not have the requisite intent to infringe and no pleading of inducement should be allowed. This argument is based on an impermissible expansion of the Federal Circuit's decision in *Commil USA, LLC v. Cisco Systems, Inc.*, 2013 U.S. App. LEXIS 12943, __ F.3d __ (Fed. Cir. June 25, 2013). The Federal Circuit never stated that the mere possibility that a defendant might be able at some time in the future to show that it might have a good faith belief that a patent was invalid renders a pleading **by the plaintiff** fatally defective and subject to dismissal. *Commil* did not address whether a good-faith belief in invalidity provides a defense to indirect infringement at the pleadings stage. *Commil* arose from a post-trial appeal of jury instructions. At most, the Federal Circuit held that if a defendant had proven facts to support a finding that it did not intend to induce infringement, a jury instruction regarding that issue might be appropriate. As discussed below, it is not appropriate to apply the language in *Commil* to a motion to dismiss as Rackspace attempts here. Further, Rackspace's alleged belief in the invalidity of the patents was based on pending Inter

2

Parties Review ("IPR") proceedings. Recently, the Patent and Trademark Office ("PTO") dismissed these IPRs, dismantling the already dubious basis for Rackspace's argument. (Cite to our letter advising LPS of this.)

This Court previously granted-in-part a motion regarding Clouding IP's First Amended Complaint and granted leave to amend in order to provide "sufficient facts to support an inference that Defendants specifically intended or encouraged others to directly infringe." (D.I. 62 ("Order") at 6.) Clouding IP's Second Amended Complaint provides detailed allegations that Rackspace continued to induce infringing activities by distributing and promoting its products and services and through the provision of instructions and similar inducing materials after the filing of the Complaint. Rule 8 requires no more.

## II.  BACKGROUND

On May 29, 2012, Clouding IP filed a complaint for patent infringement against Rackspace. (D.I. 1.) The May 29, 2012 Complaint did not allege induced infringement. On August 20, 2012, Clouding IP filed an Amended Complaint alleging direct, indirect and willful infringement of patents owned by Clouding IP. (D.I. 13.) Shortly thereafter, Rackspace filed a motion to dismiss the First Amended Complaint. (D.I. 16.)

On May 24, 2013, this Court denied Defendant Oracle Corporation's ("Oracle") motion to dismiss Clouding IP's claims of direct infringement finding the direct infringement allegations were sufficient. (D.I. 61 at 4.) With respect to Clouding IP's claims of indirect infringement which were challenged by Defendants Amazon.com Inc, Amazon Web Services, LLC (collectively, "Amazon"), Oracle, and Rackspace, the Court found that the knowledge prong of induced infringement was established with respect to post-filing conduct. However, the Court found the Complaint contained "no such facts" "to support an inference that Defendants specifically intended or encouraged others to directly infringe." (D.I. 61 at 6.). On June 22,

3

2013, Clouding IP filed its Second Amended Complaint. (D.I. 71.) The Second Amended Complaint alleges direct, indirect and willful infringement. Specifically the Complaint alleges that Rackspace induced infringement of six patents owned by Clouding IP, U.S. Patent Nos. 7,596,784, 7,065,637, 6,738,799, 6,925,481, 6,631,449, and 6,918,014 (collectively, the "patents-in-suit"). On July 12, 2013, Rackspace filed its motion seeking to dismiss Clouding IP's Second Amended Complaint. (D.I. 76.)

## III. ARGUMENT

Rackspace brings its motion on exceedingly narrow grounds; this Court having already found Clouding IP's pleading of indirect infringement was sufficient except as to intent. Rackspace does not, nor can it, dispute that Rackspace had knowledge of the patents. Rackspace is limited to contending that the Complaint fails to demonstrate that Rackspace had the requisite intent to induce infringement. Yet, to allege intent based on a claim of indirect infringement arising from post-filing conduct a plaintiff need only plead that the defendant had knowledge of the patent and "deci[ded] to continue its conduct." *Monec Holding AG v. Motorola Mobility*, 897 F. Supp. 2d 225 (D. Del. 2012) (discussing differences between pleading requirements for indirect infringement as between pre-filing and post-filing conduct). Rackspace further makes the novel argument that the Court should accept at the pleading stage and without support that Rackspace had a good faith belief that the patents were invalid (something Rackspace suggests it should not even have to allege, much less prove) and that this hypothetical belief renders it impossible for any allegation of indirect infringement to survive even at the pleading stage. Neither argument is supported by law or facts.

A. **Clouding IP's Complaint Sufficiently Pleads The Intent Required For Induced Infringement Arising From Post-Filing Conduct.**

Rackspace asserts that Clouding IP failed to allege sufficient facts to support the intent requirement for induced infringement. Where a party alleges indirect infringement based on post-filing conduct, it need only plead that the defendant had knowledge of the complaint and continued to sell the infringing service or product post-filing.

> [I]f a complaint sufficiently identifies, for purposes of Rule 8, the patent at issue and the allegedly infringing conduct, a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*. [Defendants] motions to dismiss, therefore, are denied as they relate to allegations of indirect infringement.

*Walker Digital v. Facebook*, 852 F. Supp. 2d 559, 565-66 (D. Del. 2012); *Apeldyn Corp.*, 852 F. Supp. 2d at 574 ("a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*.").[1]

Clouding alleges that Rackspace had knowledge of the Complaint yet continued to sell infringing products and services post-filing. First, the Complaint identifies Rackspace's knowledge of the patents.

> Rackspace has had actual knowledge of the [] patent since at least the filing of the original complaint in this action.
> (D.I. 71 ¶ 12.)
>
> Since at least the filing of the original complaint in this action, Rackspace has had actual knowledge of the [] patent and has known that the use of such product and/or services by its customers and end-users constituted direct infringement of the [] patent.
> (D.I. 71 ¶¶ 14, 27, 39, 58, 84, 97.)

---

[1] The complaint in *Apeldyn Corp. v. Sony Corp.,* contains allegations that are very similar to those made in Clouding IP's Complaint. For example, the Court identified the complaint as alleging "Sony works directly with American customers to develop infringing LCD televisions for sale by its customers to end consumers." *Apeldyn Corp.,* 852 F. Supp. 2d at 573. The Court rejected Defendants contention that such allegations were "conclusory and formulaic assertions." *Id*.

5

> [E]ven though Rackspace has been aware of the []patent and that its customers and end-users infringe the [] patent for over a year, to date Rackspace has neither made any changes to the functionality, operations, marketing, sales, technical support etc. of such products and services.
> (D.I. 71 ¶¶ 17, 29, 41, 60, 87, 100.)
>
> ***Despite the information gleaned from the original complaint*** in this action, Rackspace continue to specifically intend for and encourage its customers and end-users to use it products and/or services in a manner that infringe the claims of the [patent].
> (D.I. 71 ¶¶ 18, 30, 42, 61, 88, 101. (emphasis added).)

Second, the Complaint alleges that Rackspace has continued to offer the infringing products and services after the filing of the complaint.

> [B]y taking active steps to encourage and facilitate direct infringement by others with knowledge of that infringement, such as, upon information and belief, by importing, making, offering for sale, and/or selling products and/or services that when used as intended infringe the [] patent. ***Such products and/or services include, by way of example and without limitation, Rackspace's Next Generation Cloud Platform***, the use of which is covered by one or more claims of the [] patent.
> (D.I. 71 ¶¶ 14. (emphasis added).)
>
> Rackspace's customers' and end-users' ***use of Rackspace's pay-per-use cloud computing products and services is facilitated*** by the use of pay-per-use systems and methods patented under the '784 patent. Thus, Rackspace's customers and end-users are billed or charged on a pay-per-use basis when using such pay-per-use cloud computing products and services.
> (D.I. 71 ¶¶ 15. (emphasis added).)
>
> Rackspace markets and promotes, e.g., through its website and sales personnel, the use of its pay-per-use products and services that infringe the [] patent when used as intended by Rackspace's customers and end-users.
> (D.I. 71 ¶¶ 16, 28, 40, 59, 86, 99.)
>
> Rackspace has neither made any changes to the functionality, operations, marketing, sales, technical support, etc. of such products and services to avoid infringing the [] patent, nor has Rackspace informed its customers or end-users how to avoid infringing the [] patent.
> (D.I. 71 ¶¶ 17, 29, 41, 60, 87, 100.)
>
> Despite Rackspace's knowledge of that risk . . . . ***Rackspace has continued to, and still is continuing to, among other things, make, use, offer for sale, and/or sell products*** and/or services patented under the [] patent.

6

(D.I. 71 ¶¶ 19, 31, 43, 62, 89, 102 (emphasis added).)

Clouding IP alleges all of the necessary elements of Rackspace's indirect infringement.

Rackspace alleges that Clouding IP must plead more than knowledge of the patents and continued distribution and sale of Rackspace's products to induce infringement. (Motion at 5.) However, Rackspace relies on case law that is inapplicable to allegations, as here, of post-filing indirect infringement. Rackspace cites *Monec Holding*, for the proposition that "when plaintiff a merely [sic] identifies accused products and makes general [allegations] . . . the motion to dismiss should be granted." (Motion at 5) (*citing Monec Holding AG,* 897 F. Supp. 2d at 234-35.) However, this Court held that the more rigid rule elucidated in *Monec Holding* was limited to allegations of indirect infringement arising from pre-filing conduct. *Monec Holding AG,* 897 F. Supp. 2d at 231 ("Defendants contend that the first amended complaint does not allege sufficient facts to support [knowledge] . . . before the action was filed.") This distinction is critical. As this Court explained in *Monec Holding*, where a plaintiff alleges induced infringement prior to the filing of a complaint and relies on the same "source material" to establish both knowledge and intent "it is not sufficiently pleaded." *Id*. at 235. This Court distinguished *Monec Holding* from cases where induced infringement arose based on post-filing conduct.[2]

---

[2] The other cases Rackspace cites are similarly unavailing. In *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006), the party was appealing a jury award of over five million dollars in damages. The *DSU* opinion, upholding the claim of indirect infringement, did not address the pleading requirements for a motion to dismiss. In fact, "complaint" and "dismiss" do not appear in the *DSU* opinion. In *Xpoint Tech. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 356 (D. Del. 2010), the claim of indirect infringement was based on pre-suit conduct and the complaint did not allege that the dismissed defendant had adequate knowledge of the patents.

7

> In *Apeldyn* and *Walker Digital,* the court concluded that a plaintiff may plead actual knowledge of the patents-in-suit as of the filing of the initial complaint to state a cause of action limited to the defendant's post-litigation conduct, and a defendant's decision to continue its conduct despite knowledge gleaned from the complaint is sufficient to establish the intent element required to state a claim for indirect infringement.

*Id*. at 235 (*citing Apeldyn Corp.*, 852 F.Supp.2d at 574 and *Walker Digital, LLC v. Facebook, Inc.,* 852 F.Supp.2d 559, 564-66 (D. Del. 2012). Thus, even the primary case Rackspace identifies as purportedly supporting its position requires denial of Rackspace's Motion. Having adequately pled that Rackspace had knowledge of the complaint and ceased to sell the infringing products the inquiry should end.

Moreover, Clouding IP's Complaint pleads facts that would meet even Rackspace's heightened (yet incorrect) legal standard. Rackspace seems to assert that Clouding IP fails to allege Rackspace's knowledge of its actions would induce third party-infringement. (Motion at 4.) Rackspace's position is contradicted by Clouding IP's express allegations: "Rackspace has had actual knowledge of the [] patent since at least the filing of the original complaint in this action (D.I. 71 ¶ 12) and "[d[espite Rackspace's actual knowledge of the [] patent and the knowledge that its customers and end-users infringed, Rackspace continued to, and still continues to, actively encourage, assist, induce, aid, and abet its customers
 (D.I. 71 ¶ 27), there is no question that Clouding IP identified the patents-at-issue, identified the allegedly infringing conduct, and specifically alleged that Rackspace had knowledge that its actions were directly infringing and inducing the infringement of the Patents-in-Suit. (D.I. 71 ¶¶ ¶¶ 17, 29, 41, 60, 87, 100.)

The decision by Rackspace to continue its infringing conduct despite knowledge of the allegations in the complaint satisfies the pleading requirements for induced infringement.

8

Accordingly, Clouding IP has more than sufficiently pled the required intent for induced infringement.

### B. Rackspace's Allegation That It Cannot Have Intent Because It Believes The Patents Are Invalid Countervails Established Law, Runs Against Fact, And Is Impermissible On A Motion To Dismiss.

Rackspace alleges that because it supposedly has a good faith basis for believing the patents are invalid it lacks the requisite intent to induce infringement. (Motion at 7). Even if this were the law, it cannot support a motion to dismiss. Rackspace alleges – in its motion, not in any actual pleading or sworn declaration – that its belief in the invalidity of the patents arises from the Patent and Trademark Office's ("PTO") granting of *Inter Partes Review* to the patents-in-suit. (*Id.*) Rackspace points to no published opinion where a Court has granted a motion to dismiss based on a defendant's supposition that a patent might be invalid. Essentially, Rackspace asks this Court to create a whole new element for a claim of induced infringement. Rackspace asks this Court to require any pleading alleging induced infringement to affirmatively negate any and all possible hypothetical beliefs that a defendant might have that its conduct was somehow not infringing. Induced infringement is governed by 35 U.S.C. § 271(b), which contains no such requirement. Neither the Supreme Court, nor the Federal Circuit, nor any other court has ever created such a pleading requirement. Rackspace's creative, but unsupported, theory suffers from at least three primary infirmities.

First, granting a motion to dismiss based on Rackspace's supposed belief that a patent might be invalid is unsupported by case law. The Supreme Court considered the elements of a claim for induced infringement in *Global-Tech Appliances, Inc.,* 131 S.Ct. 2060. Nowhere did the Supreme Court suggest that negating all possibilities of a defendant's hypothetical beliefs of non-infringement was an element of a claim for indirect infringement. Rackspace cites *Commil USA, LLC v. Cisco Sys.,* for the proposition that a "good-faith belief of invalidity may negate the

9

requisite intent for induced infringement." (Motion at 7.) However, *Commil* is inapplicable to a motion to dismiss. In *Commil*, the question addressed by the Federal Circuit was whether "the district court erred in preventing Cisco (the defendant) from presenting evidence during the second trial of its good-faith belief of invalidity to rebut Commil's allegations of induced infringement." *Commil,* 2013 U.S. App. LEXIS 12943 at *5. The decision does not address whether a good faith belief in invalidity is a basis for dismissing a claim at the pleading stage. In fact, contrary to Rackspace's theory here, *Commil* suggests that at most, a good faith belief in invalidity might, under certain circumstances, be a defense to a claim of indirect infringement. Thus, the facts of such a good faith belief must be alleged and proven ***by the defendant***, not negated at the pleading stage by the plaintiff. The fact that the defendant in *Commil* was requesting review of a trial order addressing the exclusion of evidence illustrates the inapplicability of *Commil* to a motion to dismiss. Ascertaining whether a defendant had a good faith belief in the invalidity of a patent is an inquiry that requires witness testimony and evidence that lies far outside the four corners of a complaint. An inquiry into a Rackspace's purported good faith belief is a fact issue that must be evaluated by the trier of fact, not something capable of determination at the pleading stage.

Second, even if it were appropriate to consider whether Rackspace had a good-faith belief about the validity of the patents-in-suit at the pleading stage, the bare allegations offered by Rackspace do not show a good faith belief. Instead the evidence shows the inappropriateness of such inquiry on a motion to dismiss. The PTO's granting of IPRs on some of the patents-in-suit does not provide a basis for alleging that Rackspace had a good faith belief that the patents were invalid. Rackspace offers no evidence (*e.g.*, declarations or documentation) establishing that the granting of the IPRs lead Rackspace to believe the patents were invalid). Further, the IPRs were

10

not granted until May, 2013, nine months after the First Amended Complaint was filed. If the PTO's granting of the IPRs provided the basis for Rackspace's belief in the invalidity of the patents it would follow that prior to the May 2013 granting of the IPRs Rackspace believed the patents valid. Further, the IPR proceedings were granted as to only roughly 1/3 of the claims in the patents-in-suit here.[3] Given that roughly 2/3 of the claims in the patents were not subject to an IPR proceeding Rackspace would not have a good faith basis for believing those claims invalid.

Also fatal to Rackspace's argument, the PTO has now dismissed all of the IPRs relating to the patents-in-suit. (D.I. 79.) The dismissal of the IPRs is clear evidence that any belief in invalidity based on the PTO's initial granting of the IPRs was ill founded. Moreover, the granting of an IPR proceeding is not a final determination of validity (*Id.*) and Rackspace offers no reason that an IPR grant, which was subsequently dismissed, would provide a good faith basis for believing the patents-in-suit invalid. Certainly, no court has ever held that the mere existence of dismissed IPR proceeding automatically negated the possibility of a claim for induced infringement as Rackspace asks this Court to hold.

Third, allowing Rackspace to allege that they have a good faith basis (without even so alleging in an answer) for believing a patent invalid at the pleadings stage would upend the standards for considering a motion to dismiss. When considering a motion to dismiss a court is required "accept as true all well-pled allegations and construe the complaint in the light most

---

[3] Declaration of Dorian Berger ("Berger Decl.") Exs. A & B. For example, Forty-two of the fifty-five claims in U.S. Patent No. 6,925,481 (the "'481 patent") and ten of the twenty-four claims in U.S. Patent No. 7,254,621 (the "'621 patent") are not subject to Oracle's IPRs. *See* Declaration of Dorian Berger ("Berger Decl.") *Decision for Institution of Inter Partes Review*, Ex. A, *Oracle Corp. v. Clouding IP, LLC*, Case No. IPR 2013-00075 ("IPR of '481 Patent") (P.T.A.B. May 3, 2013); and *Decision for Institution of Inter Partes Review*, Ex. B at 13-14 *Oracle Corp. v. Clouding IP, LLC*, Case No. IPR 2013-00088 ("IPR of '621 Patent") (P.T.A.B. May 14, 2013).

11

favorable to the plaintiff." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 253 (3d Cir. 2009). Essentially, Rackspace asks the Court to hold that when a party asserts in a motion to dismiss that it believes it has a defense, the underlying claim should be dismissed for failing to negate that defense. Rule 8 has never contained such a requirement. Allowing Rackspace to point outside the four corners of the Complaint and allege a supposed defense would upend this rule and turn (as Rackspace seeks) a motion to dismiss into a proceeding in which all defenses are presumptively established without any requirement of proof.

## IV. CONCLUSION

Rackspace's motion to dismiss relies on inapplicable case law to create new pleading requirements inconsistent with the governing statute, the relevant decisions of the Supreme Court, the Federal Circuit, and common sense. Clouding IP's Second Amended Complaint provides more than sufficient allegations of induced infringement. As such, Rackspace's motion should be denied.

| | |
|---|---|
| July 29, 2013 | BAYARD, P.A. |
| OF COUNSEL: | /s/ *Stephen B. Brauerman* |
| | Richard D. Kirk (rk0922) |
| Marc A. Fenster | Stephen B. Brauerman (sb4952) |
| Brian Ledahl | Vanessa R. Tiradentes (sb5938) |
| Dorian S. Berger | 222 Delaware Avenue, Suite 900 |
| Russ August & Kabat | Wilmington, DE 19801 |
| 12424 Wilshire Boulevard, 12th Floor | (302) 655-5000 |
| Los Angeles, CA 90025-1031 | rkirk@bayardlaw.com |
| (310) 826-7474 | sbrauerman@bayardlaw.com |
| mfenster@raklaw.com | vtiradentes@bayardlaw.com |
| bledahl@raklaw.com | |
| dberger@raklaw.com | Attorneys for Plaintiff, |
| | CLOUDING IP, LLC |