IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLOUDING IP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-675-LPS |
| | ) | |
| RACKSPACE HOSTING, INC., | ) | |
| RACKSPACE US, INC., and JUNGLE | ) | |
| DISK, LLC | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF OF DEFENDANTS RACKSPACE HOSTING, INC.,
RACKSPACE US, INC. AND JUNGLE DISK IN SUPPORT OF
<u>MOTION TO DISMISS FOR LACK OF STANDING</u>**

ASHBY & GEDDES
Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Daniel T. Shvodian
James F. Valentine
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304
(650) 838-4300

Matthew C. Bernstein
PERKINS COIE LLP
11988 Camino Real, Suite 200
San Diego, CA  92130
(858) 720-5700

Dated:  January 15, 2014

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ------------------------------------------------------------ 2

    A.    The Purpose of the Open Invention Network Is to Promote
         Open Source Software Through Its Licensing Program ----------------- 2

    B.    The Symantec/OIN License Runs With The Patents --------------------- 2

    C.    Limitation/Termination Provisions ------------------------------------------- 3

        1.    Limitation Election – Section 2.2 --------------------------------- 3

        2.    Change of Control – Section 2.3 ---------------------------------- 4

II.    DISCUSSION ------------------------------------------------------------------------- 5

    A.    Clouding's Reliance Upon the Symantec/Clouding Agreement's
         Use of the Word  "Title" Is Not Sufficient to Confer Standing ---------- 5

    B.    Clouding's Arguments that it Received "All Substantial Rights"
         in Spite of the Symantec/OIN License Are Based on a Misread-
         ing of that License ---------------------------------------------------------- 6

        1.    Section 2.3 of the Symantec/OIN License Does Not
            Permit a Patent-by-Patent Opt Out of that License --------------- 6

        2.    Clouding Misconstrues Wiav by Trying to Apply it to
            the "All Substantial Rights" Inquiry ------------------------------- 9

    C.    Clouding Also Cannot Claim Standing As An Exclusive Licen-
         see ------------------------------------------------------------------------------- 10

III.   CONCLUSION ----------------------------------------------------------------------- 10

# TABLE OF AUTHORITIES

*CASES*                                                                                               *PAGE(S)*

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  2009 U.S. Dist. LEXIS 69556 (E.D. Tex. July 6, 2009) ----------------------------------5

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  2009 U.S. Dist. LEXIS 69736 (E.D. Tex. Aug. 10, 2009)--------------------------------6

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001)------------------------------------------------------------ 5, 9, 10

*King Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*,
  2006 WL 3933091 (D.N.J. Jan. 22, 2007) -----------------------------------------------5

*Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*,
  144 U.S. 248 (1892) ----------------------------------------------------------------------------5

*Raber v. Pittway Corp.*,
  1992 WL 219016 (N.D. Cal. 1992)-------------------------------------------------------5, 6

*Uniloc Luxembourg S.A. v. CompuLink Business Systems, Inc.*,
  No. 2:13-cv-03244, at *12 (C.D. Cal. May 16, 2013)---------------------------------5, 6

*Waterman v. Mackenzie*,
  138 U.S. 252 (1891) ----------------------------------------------------------------------------5, 6

*Wiav Solutions LLC v. Motorola, Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010)-----------------------------------------------------------6, 9

OTHER AUTHORITIES

RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981) ---------------------------------7, 8

In its opening brief, Rackspace showed that Clouding lacks standing to bring this suit on its own because it does not possess "all substantial rights."  Rackspace further showed that Clouding cannot even be a party to this suit because Clouding is not an exclusive licensee in light of the rights that Symantec retained or previously relinquished.  Specifically, Rackspace demonstrated that the Symantec/OIN license allows anyone to obtain a license to the patents-in-suit from someone other than Clouding.

In its response, Clouding fails to rebut this showing or carry its burden to demonstrate that it has standing to sue.  Instead, Clouding repeats its earlier assertion that it has standing because the relevant documents use the word "title."  But even the cases that Clouding cites fail to support Clouding's argument.

Clouding also misconstrues the OIN license in a manner that would undermine the purpose of the Open Invention Network.  That purpose is to promote the sharing and use of open source software, and the primary way that OIN achieves this is by protecting members from infringement allegations through its license agreement. Clouding does not dispute that Symantec joined OIN and received a license to the OIN patents and the patents of other OIN members in exchange for a license to Symantec's patents.  But according to Clouding, Symantec was then permitted to withdraw the patents-in-suit from the license that it granted to other OIN members, assign those patents to Clouding, and have Clouding sue other OIN members for the financial benefit of Symantec, all while Symantec continues to enjoy the benefits and protections of being an OIN member and licensee.  Clouding's arguments both defy common sense and contradict the terms of the OIN license.

Having failed to establish that Clouding holds all rights or "all substantial rights" to the patents-in-suit, Clouding lacks standing to sue by itself.  Moreover, because Clouding cannot even show that it is an exclusive licensee, Clouding cannot be a party to this litigation.

## I.     FACTUAL BACKGROUND

Clouding's response to Rackspace's brief is founded upon a misreading of the Symantec/OIN license.  Therefore, some additional background regarding that license may assist the Court in understanding its operation.

### A.     The Purpose of the Open Invention Network Is to Promote Open Source Software Through Its Licensing Program

As Rackspace noted in its opening papers, the Open Invention Network ("OIN") is dedicated to promoting the Linux open source software.  OIN is an intellectual property company that promotes Linux through a patent cross-licensing program.  OIN itself owns more than 100 patents and states on its website:

> Open Invention Network® believes that one of the keys to innovation in the Linux community is the ability to share software code and ideas. Open Invention Network® acquires patents and makes them available royalty-free to any company, institution or individual that agrees not to assert its patents against the Linux System. This enables companies to make significant corporate and capital expenditure investments in Linux — helping to promote collaboration and fuel economic growth.

(http://www.openinventionnetwork.com/patents.php.)

### B.     The Symantec/OIN License Runs With The Patents

Given the purpose of OIN and the benefits of being a member, the OIN license is broad and is designed to prevent circumvention and lawsuits against the Linux System by simply assigning licensed patents to another entity.

Definitions in the license for "Affiliate" and "Your Patents" mean that:  Applying those definitions, under Section 1.2 of the OIN agreement, signators:



Additionally, under Section 5.1 of the agreement, ██████████████ ████████████████████████████████████████████. (*See* Ex. F at § 5.1 ("████████████████████████████████████████████████ ████████████████████████████████████████████████

Further, the signators agree that any effort to assign any rights to the patents without making them subject to the OIN agreement is void. (*Id.* ████████████ ████████████████████").) Thus, signators to the OIN agreement give up the right to assign any rights to the patents, except subject to the OIN agreement.

### C.  Limitation/Termination Provisions

The OIN agreement provides two mechanisms by which the scope of the agreement can be limited or terminated with increasingly harsh consequences: 1) the "Limitation Election" provision of Section 2.2; and 2) the "Change of Control" provisions of Section 2.3.

### 1.  Limitation Election – Section 2.2



Under Section 2.2, a signator may ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ (*See* Ex. F at § 2.2.) Similarly, while OIN's license to the signator for its past products and services continue, ████████████████████████████████████████████████████ ████████ (*Id.*)  In short, Section 2.2 provides for an ████████████

███████████████████████████████████████████

██████████████████████████████████

### 2.      Change of Control – Section 2.3

In light of the fact that the entire corporate family is governed by and must agree to the OIN license terms, changes in the corporate form may result in situations where a signator can no longer make the representations required by Section 1.2.  For example, a signator could become a subsidiary of another entity and the new parent (now an "Affiliate" under the OIN agreement) might be unable to license its patents or the patents of all the other members of the new corporate family.  Being only a subsidiary, the original signator would lack the power to compel compliance or bind the new parent or other member of the new corporate family.

Section 2.3 of the OIN agreement addresses such situations and provides:



(Ex. F § 2.3.)  Thus, if a change in corporate form prevents the signator from granting the licenses required by Section 1.2, the signator immediately loses its license to the OIN portfolio, but any license already granted by the signator to then members of OIN continues.  In short, the effect of Section 2.3 is draconian in that the signator is immediately exposed to suit by OIN for infringement of more than 100 patents while simul-

---

[1] ████████████████████████████████████████
█████████████████████████████████████████

taneously precluded from bringing its own suit against OIN or other OIN members for prior products/services.

## II.   DISCUSSION

**A.   Clouding's Reliance Upon the Symantec/Clouding Agreement's Use of the Word "Title" Is Not Sufficient to Confer Standing**

As it did in responding to Amazon's brief, Clouding asserts that because the Symantec/Clouding Agreement purports to transfer "title," *ipso facto*, Clouding has "title" and, therefore, standing.  Faced with a raft of cases stating otherwise, including, *Waterman v. Mackenzie*, 138 U.S. 252 (1891), *Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248 (1892), *Raber v. Pittway Corp.*, 1992 WL 219016 (N.D. Cal. 1992), *Uniloc Luxembourg S.A. v. CompuLink Business Systems, Inc.*, No. 2:13-cv-03244, at *12 (C.D. Cal. May 16, 2013), and *King Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2006 WL 3933091 (D.N.J. Jan. 22, 2007), Clouding attempts to discredit *Raber* by saying "several district courts had refused to follow the holding in *Raber*."  (D.I. 171 at 9.)  By "several," Clouding apparently means "two," and both of those decisions are from the Eastern District of Texas.  Moreover, neither of those cases questioned *Raber*'s application of *Waterman* or the fact that the use of the word "title" does not answer the question of whether title was transferred.  Instead, with regard to *Raber*, both of those cases focus on the issue of whether pre-existing licenses preclude a party from being an "exclusive licensee."  That is a different inquiry than whether a party holds title or "all substantial rights."  *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) ("As a prudential principle, an exclusive licensee *having fewer than all substantial patent rights* possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner . . .") (emphasis added).

Clouding's citation to the magistrate judge's recommendation in *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 69556 (E.D. Tex. July 6,

2009) is particularly curious because the district court later overruled in part the magistrate judge's recommendation and held that the plaintiff lacked "all substantial rights" at the time of suit. *See Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 69736, at *14 (E.D. Tex. Aug. 10, 2009). There, the transaction documents were titled an "Assignment and Patent License Agreement" and "Assignment of Rights" and included a statement that what was transferred was the "entire right title, and interest in the Patents …" *Id*. at *3. The district court, however, noted that the original patentee retained, *inter alia*: 1) an interest in the proceeds of any litigation; 2) a veto on alienation by the alleged transferee; 3) a license to practice the patents including a right to sublicense. *Id*. at *13. In addition, the alleged transferor could not indulge alleged infringers. *Id*. at *13-14. Noting all of these retained rights and applying *Waterman*, the court held that the transaction was *not* an assignment and that the plaintiff lacked "all substantial rights." *Id*. at *14. Thus, as in *King Pharma*, *Uniloc*, and *Raber*, documents purporting to be assignments were, at best, merely licenses not transferring "all substantial rights" or conferring standing.

The same is true here, and Clouding's repeated claims that "title" was transferred fail to show otherwise.

**B.      Clouding's Arguments that it Received "All Substantial Rights" in Spite of the Symantec/OIN License Are Based on a Misreading of that License**

Clouding's efforts to avoid the ongoing effects of the Symantec/OIN license and its claim that it possesses "all substantial rights" to the patents-in-suit are founded on: 1) a misreading of the Symantec/OIN license; and 2) a misunderstanding of the Federal Circuit's decision in *Wiav Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010). Thus, Clouding fails to show that it possesses "all substantial rights" to the patents-in-suit, particularly the right of exclusivity.

1.      **Section 2.3 of the Symantec/OIN License Does Not Permit a Patent-by-Patent Opt Out of that License**

As noted above, Section 2.3 of the OIN license addresses situations in which a change in corporate form prevents a signator to the OIN agreement from being able to make the grants and representations required by Section 1.2.  Clouding, however, asserts that the provisions of Section 2.3 can be invoked on a patent-by-patent basis in an effort to claim that the OIN license was terminated with respect to the patents-in-suit but continued for other unnamed Symantec patents.  (*See* D.I. 171 at 12-13.)  That position is clearly wrong.

Sections 2.2 and 2.3 apply to parties as a whole and have no language permitting their application to individual patents.  Section 2.3 specifies that if there is a change of control ██████████████████████████████████████ ████████████████████████ and ███████████████████████████ ████████████████████████████████████████ (Ex. F at § 2.3.)  There is no provision for a change of control regarding individual patents that would allow a signator to remove some patents from the OIN agreement while the signator remains within the protections of the agreement.  This same "all or nothing" approach is applied to Limitation Elections under Section 2.2.  Thus, "change of control" cannot refer to an alleged assignment of a patent, but rather a change of control in the corporate structure.

Moreover, as noted above, the Symantec/OIN agreement has a specific provision – Section 5.1 – that █████████████████████████████████████ ████████████ (*See* Ex. F at § 5.1 ████████████████████████ ████████████████████████████████████████ ██████████████████████).)  If Section 2.3 could be applied on a patent-by-patent basis when individual patents are transferred to other entities, as Clouding proposes, then Section 5.1 would be superfluous in light of the recitation in Section 2.3 that the licenses granted by the signator ████████████████████████████

████ Thus, Clouding's interpretation of the Symantec/OIN license violates the settled principle that a contract should be read to give meaning to all of the terms.  *See* RE-STATEMENT (SECOND) OF CONTRACTS § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect . . . .").

Further, the conduct of the two signators, Symantec and OIN, informs a proper understanding of the agreement.  *See id.* § 202 (1981) (note (g) "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.").  After execution of the Symantec/Clouding Agreement, both OIN and Symantec continued to conduct themselves as though there was no change of control under Section 2.3.  ████████████████████████ ████████████████████████ and Symantec recently made a "Limitation Election" under Section 2.2.  (*See* Ex. H, I.)  None of those steps would make any sense if the Symantec/OIN Agreement were terminated under Section 2.3, as Clouding newly alleges.

More generally speaking, Symantec could not transfer to Clouding more rights than Symantec had at the time of the Symantec/Clouding agreement.  At that time, Symantec had already given up the right to transfer any Symantec patents, except subject to the terms of the OIN agreement.  (*See* Ex. F § 5.1.)  Further, Symantec had already agreed that any efforts to do so were void.  (*See id.*)  In addition, Symantec had already transferred to OIN a license that allowed more entities and products to be licensed in the future through agreed modification mechanisms.  Thus, whatever interests Clouding took, it took subject to the terms of the Symantec/OIN license.

███████████████████████████████████████

███████████████████████████████████████

███   Terms of the Symantec/OIN license that continued in effect until Symantec's "Limitation Election" include Section 1.2, which extends the Symantec/OIN licensee to future OIN licensees, and Section 2.1, which provides for updates to the "Linux System" definition.  Thus, Rackspace and others were not licensed in a manner inconsistent with the Symantec/Clouding Agreement.  Instead, the licenses were issued pursuant to the powers that Symantec had already relinquished at the time of the Symantec/Clouding transaction.

> **2.    Clouding Misconstrues *Wiav* by Trying to Apply it to the "All Substantial Rights" Inquiry**

Clouding's argument with regard to *Wiav*, 631 F.3d 1257, misses the mark. *Wiav* did not address the issue of what constitutes a transfer of "all substantial rights." Indeed, the actual patentee in *Wiav*, Mindspeed, was one of the parties to the litigation. *See id.* at 1262 ("[T]he complaint also named Mindspeed as the 'defendant patent owner' of the Mindspeed patents.").  Instead, *Wiav* addressed the somewhat different issue of what constitutes "exclusive licensee" status.  *See, e.g., id.* at 1264-67.  The Federal Circuit recognizes that a party may be an exclusive licensee while simultaneously lacking "all substantial rights."  *See Intellectual Prop. Dev., Inc. v. TCI Cablevi-*

---

[2] Clouding contends that █████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[3] Clouding does not appear to dispute that ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

*sion of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001).  Thus, *Wiav* is not instructive on the issue of whether Clouding obtained "all substantial rights."

As Rackspace noted in its opening papers, one of the essential rights in a patent is the right of exclusivity, and a party lacking that right does not hold "all substantial rights."  (*See* D.I. 167 at 7, 9-11.)  In light of ███████████████████ ████████████████████████ Clouding never had the right of exclusivity or "all substantial rights."  Therefore, Clouding lacks standing to bring this case on its own.

**C.     Clouding Also Cannot Claim Standing As An Exclusive Licensee**

Clouding appears to concede that it is not an exclusive licensee if the Symantec/Clouding Agreement is subject to the previously executed Symantec/OIN license.  That is a point which Clouding conceded before Rackspace raised the issue of the Symantec/OIN license.  (*See* Amazon Opp. D.I. 129 at 10 ("[Clouding's] expansive right is subject only to a few pre-existing, non-exclusive licenses. (*Id.*, Ex A ████████ ████████████████████████████).)  In light of the fact that the agreements dictate that same result, Clouding has not established that it is an exclusive licensee.  Thus, Clouding lacks standing to be a party in this case even if Symantec had been named as a co-plaintiff.

## III.     CONCLUSION

Clouding bears the burden to show that it had standing to bring this litigation at the time it filed suit, but Clouding has failed to carry that burden.  Clouding cannot show that it possesses all substantial rights to the patents-in-suit, and therefore Clouding lacks standing to bring this suit on its own.  Moreover, because Clouding cannot show that it is an exclusive licensee, it still would not have standing even if Symantec joined the litigation.  Therefore, Clouding's complaint must be dismissed.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

_____

*Of Counsel:*

Daniel T. Shvodian
James F. Valentine
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304
(650) 838-4300

Matthew C. Bernstein
PERKINS COIE LLP
11988 Camino Real, Suite 200
San Diego, CA  92130
(858) 720-5700

Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants*

Dated:  January 15, 2014